# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARLENE KRAUSS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0714-LWW |
| | ) | |
| 180 LIFE SCIENCES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Date Submitted: December 7, 2021
Date Decided: March 7, 2022

Kenneth J. Nachbar, S. Mark Hurd, and Sara Toscano, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Aaron Miner, ARNOLD & PORTER, New York, New York; *Counsel for Plaintiff Marlene Krauss, M.D.*

Matthew F. Davis, Aaron R. Sims, and Callan R. Jackson, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Jeffrey W. Shields, SHIELDS LAW OFFICES, Irvine, California; *Counsel for Defendant 180 Life Sciences Corp.*

**WILL, Vice Chancellor**

A former director and officer of a Delaware corporation seeks advancement pursuant to provisions in the company's charter and bylaws. She is pursuing advancement of expenses incurred in responding to subpoenas from the Securities and Exchange Commission, in defending herself against third-party claims in a New York state action, and in connection with litigation in this court. The company contests her entitlement to advancement, asserting that she was not made a party to those proceedings by reason of the fact that she was a fiduciary.

The plaintiff has moved for partial summary judgment on her entitlement to advancement, including an award of fees-on-fees. This decision grants that motion in part.

## I.    FACTUAL BACKGROUND

The following facts are drawn from the undisputed allegations of the Verified Amended and Supplemental Complaint for Advancement (the "Complaint") and from certain documentary exhibits.[1]

---

[1] Dkt. 7. Citations to "Pl.'s Opening Br. Ex. __" refer to exhibits to the Transmittal Declaration of Sara Toscano in Support of the Opening Brief in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. 37). Citations in the form of "Def.'s Answering Br. Ex. __" refer to exhibits to the Transmittal Declaration of Callan R. Jackson in Support of Defendant's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. 39). Page numbers to exhibits are designated by the last three digits of a Bates number, where appropriate.

## A. Krauss, KBL, and KBL's Governing Documents

Plaintiff Marlene Krauss is the former Chief Executive Officer and director of defendant KBL Merger Corp. IV ("KBL"), a special purpose acquisition company. She served in those roles until her resignation on November 6, 2020—when KBL entered into a business combination with 180 Life Sciences Corp., Katexco Pharmaceuticals Corp., and CannBioRx. After the transaction closed, KBL was renamed 180 Life Sciences Corp. (the "Company").[2]

KBL's original certificate of incorporation provided for advancement of legal fees incurred by officers and directors in connection with their duties.[3] Its July 2017 Amended and Restated Certificate of Incorporation detailed KBL's advancement policy in Section 8.2(a):

> To the fullest extent permitted by applicable law . . . the Corporation shall indemnify and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding . . . by reason of the fact that he or she is or was a director or officer of the Corporation . . . whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all liability and loss suffered and expenses (including, without limitation, attorneys' fees . . . ) reasonably incurred by such indemnitee in connection with such proceeding. The Corporation shall

---

[2] Verified Am. & Suppl. Compl. for Advancement ("Compl.") ¶¶ 2-3 (Dkt. 7).

[3] *Id.* ¶ 6.

2

to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) incurred by an indemnitee in defending or otherwise participating in any proceeding in advance of its final disposition . . . .[4]

Section 8.2(a) also provided that approval by KBL's board of directors (the "Board") was required for advancement of proceedings "initiated" by officers and directors:

> Notwithstanding the foregoing provisions of this Section 8.2(a), except for proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify and advance expenses to an indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board.[5]

And Section 8.2(b) contained a non-exclusivity provision:

> The rights to indemnification and advancement of expenses conferred on any indemnitee . . . shall not be exclusive of any other rights that any indemnitee may have or hereafter acquire under law, this Amended and Restated Certificate, the Bylaws, an agreement, vote of stockholders or disinterred directors, or otherwise.[6]

Section 8.2 remains unchanged in KBL's Second Amended and Restated Certificate of Incorporation (the "Charter"), which it adopted in connection with the business combination.[7]

---

[4] Pl.'s Opening Br. Ex. B § 8.2(a).

[5] *Id.*

[6] *Id.* § 8.2(b).

[7] Pl.'s Opening Br. Ex. C ("Charter") § 8.2; Compl. ¶ 7.

The Company's Amended and Restated Bylaws (the "Bylaws") also provide for an advancement right in Section 8.2:

> [A]n Indemnitee shall also have the right to be paid by the Corporation to the fullest extent not prohibited by applicable law the expenses (including, without limitation, attorneys' fees) incurred in defending or otherwise participating in any such proceeding in advance of its final disposition . . . provided, however, that, if the DGCL requires, an advancement of expenses incurred by an Indemnitee . . . shall be made only upon the Corporation's receipt of an undertaking . . . .[8]

Unlike the advancement right established in the Charter, the Bylaws do not require Board approval for advancement of expenses related to certain types of proceedings.

### B.     The Lawsuits and Investigation

After the business combination closed, the United States Securities and Exchange Commission launched an investigation into KBL's business combination. In April 2021, the SEC served Krauss with four subpoenas in connection with its investigation.[9]  One subpoena directed Krauss to personally produce documents (the "Krauss Subpoena").[10]  The other three subpoenas were directed to entities affiliated with Krauss that were involved in the business combination: KBL IV Sponsor LLC

---

[8] Pl.'s Opening Br. Ex. D ("Bylaws") § 8.2(a).

[9] Compl. ¶¶ 1, 10; *see* Pl.'s Opening Br. Ex. E.

[10] *Compare* Pl.'s Opening Br. Ex. E at 080 ("The subpoena requires you to provide us with documents."), *to*, *e.g.*, *id.* at 056 ("The subpoena requires KBL Sponsor to produce documents to the SEC.").

("KBL Sponsor"), KBL Healthcare Ventures LP, and KBL Healthcare Management, Inc (together, the "KBL Entities").[11] Krauss was served with a follow-up subpoena to the Krauss Subpoena in May 2021.[12]

In April 2021, the Company initiated litigation against Tyche Capital, LLC in New York state court (the "*Tyche* Action"), alleging breach of contract.[13] In May 2021, Tyche asserted third-party claims and served Krauss with a third-party summons.[14]

On September 1, 2021, the Company filed a complaint against Krauss, KBL Sponsor, and KBL Healthcare Management, Inc. in this court (the "Direct Action").[15] The Company is pressing claims including breach of fiduciary duty and alleges, among other things, that Krauss intentionally failed to disclose information that rendered certain KBL disclosures materially false and misleading.[16] Krauss and the other named defendants filed their Answer and Verified Counterclaims and Third-Party Complaint (the Counterclaim Complaint") on October 5, 2021, asserting

---

[11] *See id.* at 008, 032, 056.

[12] *Id.* at 001-005.

[13] *180 Life Sciences Corp. v. Tyche Cap. LLC* is before the Supreme Court of the State of New York, County of New York. *See* Index No. 652502/2021 (N.Y. Sup. Ct., New York County).

[14] *See* Compl. ¶ 13.

[15] *See* C.A. No. 2021-0754-LWW, Dkt. 1 ("Company Compl.").

[16] *Id.* ¶¶ 51-54.

5

counterclaims against the Company and third-party claims against the Company's officers and directors.[17]

### C. Krauss's Demands and This Litigation

On May 26, 2021, Krauss sent a letter to the Company demanding advancement for legal fees in connection with the SEC subpoenas and *Tyche* Action.[18] The Company did not respond.

On June 18, 2021, Krauss submitted a second demand for advancement. Her letter contained an undertaking to repay amounts advanced to her if it was ultimately determined that she was not entitled to indemnification by the Company.[19] Again, there was no response.[20]

On August 2, 2021, Krauss sent a third demand to the Company, restating her previous advancement requests and adding requests related to the then-threated Direct Action. The August 2, 2021 demand also contained undertakings to repay advanced funds.[21] The Company did not respond.

---

[17] *See* C.A. 2021-0754-LWW, Dkt. 9. ¶¶ 142-72 ("Countercl. Compl.").

[18] Compl. ¶ 15; Pl.'s Opening Br. Ex. G.

[19] Compl. ¶¶ 16-17, 19; Pl.'s Opening Br. Ex. H.

[20] Compl. ¶ 19.

[21] *Id.* ¶ 18; Pl.'s Opening Br. Ex. I.

On August 19, 2021, Krauss filed her Verified Complaint for Advancement, seeking advancement under the Company's Charter and Bylaws.[22] She subsequently supplemented that complaint to pursue advancement in connection with the *Tyche* Action and Direct Action.[23] The Company answered the amended complaint on September 23, 2021, denied that that it owed advancement to Krauss, and asserted a number of affirmative defenses.[24]

On November 15, 2021, Krauss filed a motion for partial summary judgment.[25] The Company did not cross-move for summary judgment. After briefing on Krauss's motion was complete, I heard argument on December 7, 2021.[26]

## II.   LEGAL ANALYSIS

Under Court of Chancery Rule 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[27]  "[T]he facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of

---

[22] Dkt. 1.

[23] Dkt. 7.

[24] Dkt. 11.

[25] Dkt. 35.

[26] Dkt. 45.

[27] Ct. Ch. R. 56(c).

demonstrating that there is no material question of fact."[28] "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of a corporate instrument."[29]

## A. Entitlement to Advancement

Krauss seeks advancement under both the Charter and Bylaws. General rules of contract interpretation apply when construing the provisions of a company's charter or bylaws.[30] I must "give language which is clear, simple, and unambiguous the force and effect required."[31]

The Charter and Bylaws unambiguously provide for mandatory advancement. Advancement is available to Krauss for expenses incurred in connection with "any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative . . . by reason of the fact that . . . she is or was a

---

[28] *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldgs. Co.*, 853 A.2d 124, 126 (Del. 2004).

[29] *Int'l Rail P'rs LLC v. Am. Rail P'rs, LLC*, 2020 WL 6882105, at *2 (Del. Ch. Nov. 24, 2020) (quoting *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006)).

[30] *Hill Int'l, Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 38 (Del. 2015).

[31] *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983).

8

director [or] officer of the Company."[32]  When advancement is mandatory, the company carries the ultimate burden of proving that advancement is not required.[33]

The "by reason of the fact" language found in the Charter and Bylaw provisions replicates language in Section 145 of the Delaware General Corporation Law.[34]  The "by reason of the fact" standard is satisfied when "a nexus or causal connection" exists between the underlying proceeding and the official's "corporate capacity."[35]  This court construes such provisions broadly to effectuate Delaware's policy of providing temporary relief from substantial expenses.[36]  "By reason of the fact" language has been interpreted to include proceedings brought against an

---

[32] Charter § 8.2(a) ("The Corporation *shall* to the *fullest extent applicable by law* pay expenses (including attorneys' fees) incurred by an indemnitee in defending or otherwise participating in any proceeding in advance of its final disposition . . . ." (emphasis added)); *see* Bylaws § 8.2 ("[A]n Indemnitee *shall* also have the right to be paid by the Corporation *to the fullest extent* not prohibited by applicable law the expenses (including, without limitation, attorneys' fees) incurred in defending or otherwise participating in any such proceeding in advance of its final disposition . . . ." (emphasis added)).  The Delaware Supreme Court found that near-identical language created a mandatory and unconditional advancement right in *Homestore, Inc. v. Tafeen*.  888 A.2d 204, 212-13 (Del. 2005) (finding that bylaws providing that "[t]he Corporation *shall pay* all expenses" to "the fullest extent permitted" by the Delaware General Corporation Law created a mandatory and unconditional advancement provision).

[33] *See Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *13 (Del. Ch. July 14, 2009) ("[I]n the case of a mandatory indemnification provision, the burden rests on the party from whom indemnification is sought to prove that indemnification is not required.").

[34] *See* 8 *Del. C.* § 145.

[35] *Tafeen*, 888 A.2d at 213.  The proceedings contemplated by Section 145(e) are "any civil, criminal, administrative or investigative action, suit or proceeding."  8 *Del C.* § 145(e).

[36] *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 327-28 (Del. Ch. 2006).

9

official for wrongdoing allegedly "committed in [her] official capacity" and "in the course of performing [her] day-to-day . . . duties."[37]

The Company presents several arguments intended to defeat Krauss's motion: first, that just one of the four SEC subpoenas was directed to Krauss, which was not served "by reason of the fact" that she is a former Company fiduciary; second, that Krauss was not named as a third-party defendant in the *Tyche* Action as a result of any conduct she undertook in her capacity as a director or officer of the Company; and third, that although parts of the Direct Action are advanceable, expenses incurred in connection with certain defenses and Krauss's Counterclaim Complaint are not. I address each argument in turn.

### 1. The SEC Subpoenas

Regarding the subpoenas served by the SEC on Krauss and the KBL Entities, Krauss asserts that she is entitled to advancement because the SEC investigation and subpoenas arise out of the business combination and her former role as a director and officer of the Company. Krauss acknowledges that she is not entitled to advancement in connection with the subpoenas directed to the KBL Entities.[38] The

---

[37] *Imbert v. LCM Int. Hldg. LCC*, 2013 WL 1934563, at *5 (Del. Ch. May 7, 2013) (quoting *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *6 (Del. Ch. June 18, 2002)).

[38] Krauss has asked that the Company advance all expenses incurred in connection with the subpoenas now and that allocation be addressed in a subsequent stage of the case. *See* Reply Br. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply Br.") 8-9 (Dkt. 41); Oral Arg. on Pl.'s Mot. for Partial Summ. J. Tr. Dec. 7, 2021 ("Oral Arg. Tr."), at 27-28 (Dkt. 45).

KBL Entities that received the SEC subpoenas are not "indemnitees" as defined in the Company's Charter or Bylaws. One must be, or have been, a "director or officer of the Corporation" to be indemnified or have their expenses advanced.[39]

As to the Krauss Subpoena, the Company contends that Krauss's expenses are not advanceable because the subpoena does not specify the capacity in which Krauss was served. That argument does not give rise to a genuine issue of material fact. Even viewing the evidence in the light most favorable to the Company, a causal nexus exists between the SEC's investigation and Krauss's former fiduciary roles.

The SEC sought, among other things, "[a]ll Communications and other Documents Concerning KBL's merger discussions and negotiations with 180 Life Sciences Corp." and "[a]ll Communications and other Documents Concerning KBL's preparation or filing of its Forms 10-Q for the fiscal quarters ended June 30, 2020 and September 30, 2020."[40] It is self-evident that these documents were requested from Krauss by virtue of her former KBL positions and not (as the Company suggests might be the case) because she was a Company stockholder.[41]

Because only one of the four subpoenas is advanceable, the parties debate how Krauss's expenses for responding to the subpoenas should be allocated for

---

[39] *See* Charter § 8.2(a); Bylaws §§ 8.1-8.2.

[40] Pl.'s Opening Br. Ex. E at 089.

[41] Def.'s Answering Br. 26-27.

purposes of calculating advancement. The Company argues that "no more than 25% of the fees incurred" should be advanced "given that only one of the four SEC Subpoenas is directed to Dr. Krauss."[42] Krauss proposes, instead, that her counsel "make a good faith effort" to allocate expenses between those incurred by Krauss and those incurred by the KBL Entities, with any expenses "benefitting both [Krauss] and any other party to the proceeding . . . included [as] if they would have been incurred on behalf of Krauss."[43]

In *Danenberg v. Fitracks*, this court approved the procedure proposed by Krauss.[44] There, the plaintiff's "counsel's good faith estimate of work solely performed for [other defendants] that [the] counsel would not have been forced to address if [the plaintiff] was the sole defendant" was excluded from an advancement.[45] The same procedure will be followed here.

### 2. The *Tyche* Action

Krauss next asserts that she is entitled to advancement with respect to the *Tyche* Action because she was named as a third-party defendant as a result of her former position as an officer and director of the Company. Krauss contends that

---

[42] *Id.* at 29.

[43] [Proposed] Order Granting Pl.'s Mot. for Partial Summ. J. and Establishing Procedure for Payment of Advancement to Pl. ¶ 4(a) (Dkt. 37).

[44] 58 A.3d 991 (Del. Ch. 2012).

[45] *Id.* at 999-1000.

allegations in the *Tyche* Action about the Company's disclosures are connected to her role as a former fiduciary, causing her to be served with the *Tyche* third-party complaint. In support of that position, she cites to background portions of the *Tyche* third-party complaint that reference her former status as a Company fiduciary.[46]

The Company disagrees, asserting that Krauss was named as a third-party defendant only because of her conduct as the principal of KBL Sponsor relating to its personal contractual obligation. A review of the third-party claims in the light most favorable to the Company supports that assertion. Krauss is named in one count of the *Tyche* third-party complaint solely in her capacity as KBL Sponsor's principal.[47] In particular, Tyche seeks a declaration that Krauss "as the principal . . . of [KBL] Sponsor" was obligated to instruct KBL Sponsor to authorize the transfer of certain shares to Tyche.[48] That claim implicates the "specific and personal contractual obligation" of KBL Sponsor.[49]

Had the Company cross-moved for summary judgment—as is typical in advancement proceedings—it might have succeeded in demonstrating that Krauss is

---

[46] *See* Pl.'s Opening Br. 10; Pl.'s Opening Br. Ex. F ¶ 111 (stating that "Krauss falsely represent[ed] to the SEC and investing public that she already transferred" the shares as context for a breach of contract claim against the Sponsor and a transfer agent).

[47] Pl.'s Opening Br. Ex. F ¶¶ 117-24.

[48] *Id.* ¶¶ 119, 124.

[49] *See Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *16 (Del. Ch. Sept. 11, 2015) (quoting *Paolino v. Mace Sec. Int'l Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009)).

not entitled to advancement for the *Tyche* Action as a matter of law. The alleged wrongdoing in the third-party claim against Krauss seems divorced from her former responsibilities or actions as a Company officer and director and explicitly concerns her role as the principal of KBL Sponsor.[50] Any purported misconduct by Krauss with regard to the Company's disclosures appears "essentially immaterial" to the claim she is defending against in the *Tyche* Action.[51]

But only Krauss has sought summary judgment and the Company has not conceded that there are no material facts in dispute.[52] I therefore must deny summary judgment on this issue. If Krauss determines to continue to press for advancement in connection with the *Tyche* Action, the matter of her entitlement must be resolved at trial.[53]

Krauss has proposed that any "close" question should be decided in favor of advancement at this phase—with a final decision to be rendered in the

---

[50] *See Imbert*, 2013 WL 5313769, at *5, *8 (distinguishing between conduct as a manager, which was advanceable, and conduct as a member, which was not advanceable).

[51] *Lieberman v. Electrolytic Ozone, Inc.*, 2015 WL 5135460, at *6 (Del. Ch. Aug. 31, 2015) (resolving cross-motions for summary judgment); *see also Charney*, 2015 WL 5313769, at *16-18 (determining, on cross-motions for summary judgment, that a former director and officer was not entitled to advancement because his former status merely "formed part of the narrative leading to" the claim and was not necessary for the alleged violations at issue).

[52] *See* Oral Arg. Tr. at 40-41.

[53] *See Evans v. Avande, Inc.*, 2021 WL 4344020, at *9 n.86 (Del. Ch. Sept. 23, 2021).

14

indemnification proceeding—because she has signed an undertaking.[54] That approach would surely be more efficient. But that benefit is "outweighed by the unreasonableness of requiring a corporation like [the Company] to bear a credit risk that it did not contract to assume."[55]

### 3. The Direct Action

Finally, Krauss seeks "advancement of expenses related to her full defense of the Direct Action, which includes her affirmative defenses, her counterclaims, and [] third-party claims."[56] The Company concedes that Krauss is entitled to advancement for portions of the Company's complaint against her. It contests advancement related to Krauss's counterclaims, third-party claims, and certain of her defenses.

### a. Defenses and Affirmative Defenses

The Company argues that Krauss is not entitled to advancement for three of her affirmative defenses and any defenses related to allegations that she caused unauthorized transfers of Company funds after her resignation. But its arguments do not give rise to a genuine issue of material fact. Summary judgment is granted

---

[54] Oral Arg. Tr. at 30.

[55] *Fasciana v. Electronic Data Sys. Corp.*, 829 A.2d 160, 175 (Del. Ch. 2003).

[56] Pl.'s Opening Br. 20.

as to the advancement of expenses for Krauss's defenses in the Direct Action. It is also granted with regard to her affirmative defenses.

With respect to Krauss's defenses to the unauthorized transfer allegations, the associated causes of action—for *ultra vires* acts, unjust enrichment, and associated declaratory relief—all satisfy the "by reason of the fact" requirement.[57] The Company accuses Krauss of, for example, "falsely attesting to KBL's Consolidated Financial Statements," "engaging in [improper] Money Transfers," and "conspir[ing] to misappropriate . . . and misapproriat[ing]" monies belonging to the Company.[58] It is unclear how Krauss could have signed off on the Company's financial statements or (allegedly) embezzled funds if she had not been a director or officer. And the Company's complaint in the Direct Action notes that Krauss was "responsible for all aspects of [the Company's] operations, finances, and procedures, including without limitation, those relating to the financial health" and "reporting and disclosure obligations" of the Company and the "proper use and payment of [the Company's] monetary assets."[59] The Company cannot withhold advancement for Krauss's defense (effectively) by its own admission.

---

[57] Company Compl. ¶¶ 55-60, 66-69.

[58] *Id.* ¶¶ 56, 59.

[59] *Id.* ¶ 62.

Given the broad view of a defense in the advancement context, Krauss is also entitled to advancement for her affirmative defenses.[60] The Company contends that Krauss's affirmative defenses should be viewed as "offensive arguments" that do not warrant advancement.[61] The only case cited in support of that proposition is *Mooney v. Echo Therapeutics, Inc.*, which does not equate affirmative defenses to offensive litigation but focuses on whether advancement is triggered by affirmative defenses asserted by the indemnitor (rather than the indemnitee).[62] Each of the defenses raised by Krauss—*in pari delicto*, unclean hands, and fraud—are traditional affirmative defenses. Even viewing the facts in the light most favorable to the Company, they have been raised to defeat allegations in the Direct Action that implicate Krauss's former corporate capacity.[63]

b. Counterclaims and Third-Party Claims

The Company's arguments against advancing Krauss's counterclaims and third-party claims in the Direct Action are more nuanced.

First, the Company contends that Krauss's claims are "proceedings . . . initiated by" Krauss that, according to the Charter, are advanceable "only if such

---

[60] *See Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992) (noting that "[i]n a litigation context the term 'defense' has broad meaning," and finding that an indemnity agreement "clear[ly]" covered affirmative defenses).

[61] Def.'s Answering Br. 46.

[62] 2015 WL 3413272, at *2, *11 (Del. Ch. May 28, 2015).

[63] *See* Countercl. Compl. at 31-33.

17

proceedings (or part thereof) w[ere] authorized by the [Company's] Board."[64] But the Bylaws provide for a separate, exclusive right to advancement—one that does not conflict with and is not limited by the Charter.[65] Section 8.2(b) of the Charter states that "[t]he rights to indemnification and advancement of expenses conferred on any indemnitee . . . shall not be exclusive of any other rights that any indemnitee may have or hereafter acquire under the law . . . the Bylaws . . . or otherwise."[66]

Section 8.2 of the Bylaws creates an advancement right "to the fullest extent not prohibited by applicable law" with no limiting language and in addition to the advancement right provided in the certificate of incorporation.[67] By contrast, Section 8.1 of the Bylaws—related to indemnification—includes a limitation

---

[64] Charter § 8.2(a); *see* Def.'s Answering Br. 40-41.

[65] *See, e.g.*, *Katzman v. Comprehensive Care Corp.*, C.A. No. 5892-VCL, at 4-5 (Del. Ch. Dec. 28, 2010) (TRANSCRIPT) ("The basic principle is that indemnification and advancement rights from one source are nonexclusive of other sources unless there is a specific agreement otherwise. What that means is a statutory right under Section 145(c) is independent and nonexclusive of a charter right, which in turn is independent and nonexclusive of any bylaw right, which in turn is independent and nonexclusive of any contract right, absent specific agreement to the contrary."); *Evans v. Avande, Inc.*, C.A. 2018-0454-LWW, at 76-78 (Del. Ch. June 25, 2021) (TRANSCRIPT) (finding a director's right to indemnification under a company's bylaws separate from other indemnification rights).

[66] Charter § 8.2(b).

[67] Bylaws § 8.2. The Company argues that the limiting language in Section 8.1 of the Bylaws applies to Section 8.2 by virtue of the defined term "Indemnitee" being used in both sections. *See* Def.'s Answering Br. 41. I find that argument unpersuasive. The board authorization language in Section 8.1 is not related to the defined term, and there is no reason to read it into Section 8.2 simply because both sections refer to "Indemnitees." *See* Bylaws §§ 8.1, 8.2; *Paolino*, 2009 WL 4652894, at *10 (declining to extend a limitation in an indemnification bylaw to the subsequent advancement bylaw).

18

identical to the one in Section 8.2(a) of the Charter.[68]  In *Homestore, Inc. v. Tafeen*, the Delaware Supreme Court explained that Section 145 "expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification."[69]  Accordingly, Krauss can seek advancement for her claims pursuant to the Bylaws, which do not require Board approval.

Next, the Company argues that advancement for the Counterclaim Complaint is unavailable because they are not brought by reason of the fact that Krauss was a Company fiduciary.  That may well be so regarding Count V of the Counterclaim Complaint, which is brought by KBL Sponsor.[70]  KBL Sponsor is not an indemnitee under the Company's Bylaws.[71]  I therefore must deny Krauss's motion for summary judgment on advancement for Count V of the Counterclaim Complaint.

Krauss's remaining counterclaims consist of breach of contract claims related to a "Sponsor Registration Rights Agreement," a breach of contract claim in connection with Krauss's resignation agreement, and a request for declaratory judgment.[72]  The Company contends that these counterclaims are not advanceable

---

[68] *See* Bylaws § 8.1.

[69] 888 A.2d at 212.

[70] Countercl. Compl. ¶¶ 167-72.

[71] *See supra* note 39 and accompanying text.

[72] Countercl. Compl. ¶¶ 147-66, 173-76.

because they are brought in Krauss's personal capacity as a stockholder or arise out of her personal contractual obligations.[73]

But certain of these counterclaims are compulsory. Where the underlying action is brought against a defendant "by reason of such person being or having been a director or officer," her counterclaims are advanceable if they are (1) "necessarily part of the same dispute" as the underlying action (*i.e.*, compulsory) and (2) "advanced to defeat, or offset" the underlying claims.[74] Counterclaims are compulsory under Delaware law where they "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim."[75] In such a scenario, advancement is owed. This court has held, for instance, that a company was required to advance fees in connection with a books and records action— naturally brought in the plaintiff's capacity as a stockholder—because the "books and records [were sought] to defend claims against him as a Manager."[76]

The claims against Krauss in the Direct Action concern her alleged false attestation regarding KBL financial statements, self-dealing monetary transfers,

---

[73] Def.'s Answering Br. 42-43.

[74] *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *3, *7 (Del. Ch. May 29, 2014); *id.* at *4 ("Delaware courts repeatedly have held that the baseline requirement for a counterclaim to be advanceable is that it qualify as compulsory."); *see Roven*, 603 A.2d at 824.

[75] Ct. Ch. R. 13(a).

[76] *Imbert*, 2013 WL 1934563, at *11.

improper redemption of KBL shares before the closing of the business combination, and improper issuance of shares to an investment bank for services rendered to KBL.[77] These allegations all stem from events taking place in and around November 2020.

Krauss's resignation agreement is part of the transactions or occurrences underlying the Direct Action. The Direct Action complaint alleges that "Krauss'[s] signing of the Resignation Agreement on behalf of both herself individually and on behalf of KBL constituted a conflict of interest" and that it created one of the "liabilities of KBL which were not recorded and/or disclosed as contingent liabilities payable . . . in the Consolidated Financial Statements."[78] The Company contends that Krauss had "actual knowledge" of the liabilities, and the alleged intentional exclusion of the resignation agreement liability from KBL's financial statements forms one of the bases for its claims against Krauss in Counts I and II of the Direct Action complaint.[79]

Further, the Company's list of alleged unauthorized transfers in the Direct Action complaint includes a transfer that is tied to Krauss's resignation counterclaim in its amount and timing.[80] Krauss's resignation agreement counterclaim against the

---

[77] Company Compl. ¶¶ 51-69.

[78] *Id.* ¶¶ 31, 33.

[79] *Id.* ¶ 32.

[80] *Id.* ¶¶ 34, 53, 56.

Company—Count IV of the Counterclaim Complaint—therefore meets the first prong of the test to determine whether it is advanceable: it is compulsory. Because it is also brought to offset the underlying claims, it is advanceable.[81]

Whether the counterclaims related to the Sponsor Registration Rights Agreement—Counts II and III—are compulsory is a closer call. Krauss reads "transactions or occurrences" broadly by linking any breach of a contract signed in connection with the business combination—regardless of the time—with the business combination itself.[82] The Company's claims in the Direct Action are centered around events connected to the business combination in November 2020. Krauss's counterclaims, however, pertain to February and August 2021 Form S-1 registration statements and an alleged triggering of notice rights under the Sponsor Registration Rights Agreement in July 2021.[83] The Company's claims and Krauss's

---

[81] The term "offset" is broad. *Pontone*, 2014 WL 2439973, at *4-5 (declining to limit the "advanced to defeat, of offset" prong and implying that the breadth of what constitutes "defending" an action means that "offset" should be read broadly as well); *see Roven*, 603 A.2d at 824 (finding that "defending" a suit includes pursuing and affirmative defenses and certain counterclaims).

[82] *See, e.g.*, Pl.'s Reply Br. at 23-24 ("Each of the claims against Dr. Krauss in the Direct Action is related to actions she took in connection with the Business Combination, and all of the Counterclaims and Third-Party claims similarly relate to actions the Company and its officers and directors took in relation to that transaction.").

[83] Countercl. Compl. ¶¶ 124-26, 136, 152, 159.

Sponsor Registration Rights Agreement counterclaims are not "necessarily part of the same dispute."[84] She is not entitled to summary judgment on that basis.

I likewise cannot conclude that summary judgment is warranted on Krauss's entitlement to advancement for her declaratory judgment counterclaim (Count VI). That counterclaim does not reference the resignation agreement claim but rather seeks an order declaring that the Company breached Krauss's rights under the Sponsor Registration Rights Agreement, that its directors and officers breached their fiduciary duties, that certain Company shares should be registered pursuant to the Sponsor Registration Rights Agreement, and that Krauss did not breach her fiduciary duties.[85] The first three declarations are simply declaratory judgment parallels of claims that were found not to be advanceable. And a declaration that "Dr. Krauss did not breach her fiduciary duties while she was both a director and the CEO of the Company" is effectively equivalent to defending herself in the underlying claim.

That leaves the question of whether Krauss's third-party claim is advanceable. It is difficult to see how her third-party claim—which is essentially a new action against previously-unnamed parties—are compulsory. "The general rule is that offensive litigation is not advanceable."[86] I cannot conclude, as a matter of law, that

---

[84] *Pontone*, 2014 WL 2439973, at *7.

[85] Countercl. Compl. ¶ 176.

[86] *Mooney*, 2015 WL 3413272, at *11.

Krauss was acting to defeat claims against her by pleading an additional claim against third-party defendants. Krauss cites no authority that would support a different result. Summary judgment with regard to Krauss's third-party claim is denied.

*　　*　　*

Regarding Krauss's defense to the Direct Action, the motion for summary is granted in part. Krauss is owed advancement in connection with her defenses, including affirmative defenses, and Count IV of the Counterclaim Complaint as a matter of law. The motion is otherwise denied as to advancement for the Direct Action.

## B. Fees-on-Fees and Prejudgment Interest

Absent an agreement otherwise, parties who successfully prosecute an advancement action are typically entitled to an award of fees for their expenses in litigating the suit.[87] The Company acknowledges that Krauss is entitled to fees-on-fees relating to this advancement action "proportionate to her success."[88] Section 8.3 of the Bylaws states that, "[i]f successful in whole or in part in [bringing] any

---

[87] *See Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 560-62 (Del. 2002) (noting that "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete"); *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *7 (Del. Ch. Jan. 30, 2004) ("'Fees on fees' are an inherent right of the party materially successful in asserting a claim for indemnification or advancement.").

[88] Def.'s Answering Br. 49.

[advancement] suit . . . [an] Indemnitee shall also be entitled to be paid the expense of prosecuting or defending such suit."[89] Krauss is therefore owed fees-on-fees in accordance with the findings of the court above.

The Company also owes Krauss prejudgment interest.[90] The Company argues that the interest is not owed until Krauss submits unredacted copies of all invoices for which she claims entitlement to advancement.[91] But Krauss has stipulated that she is not seeking advancement for the redacted portions of the invoices.[92] Pre-judgment interest is awarded "for the period of time when [the Company] unjustifiably refused to provide advancement"[93]—that is, starting twenty days after Krauss's demands for advancement.[94]

## III. CONCLUSION

Partial summary judgment is entered for Krauss, in part. The Company must advance to Krauss her fees and expenses incurred in connection with the Krauss Subpoena and her defenses (including affirmative defenses) and one counterclaim

---

[89] Bylaws § 8.3.

[90] *Roven*, 603 A.2d at 826 ("[P]re-judgment interest is a matter of right.").

[91] *See* Def.'s Answering Br. 19, 49-50.

[92] Pl.'s Reply Br. 25.

[93] *Citrin v. Int'l Airport Ctrs. LLC*, 922 A.2d 1164, 1167 (Del. Ch. 2006).

[94] *See* Bylaws § 8.3 (requiring advancement of expenses to be paid in full within 20 days).

in the Direct Action. The parties are to confer and, within ten days, submit an implementing order consistent with this decision.

Because summary judgment is also denied in part, questions of entitlement remain to be decided. The parties are directed to submit a joint letter within ten days setting forth their respective positions on a procedure for resolving the outstanding entitlement issues and for the payment of advancement consistent with *Fitracks*, insofar as Krauss has been found entitled to advancement as a matter of law.